UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sergio Adrian Ramirez, | No. 2:23-cv-02911-KJM-JDP |
| Petitioner, | ORDER |
| v. | |
| Arinda Phillips, et al., | |
| Respondents. | |

On December 14, 2023, petitioner Sergio Adrian Ramirez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner now moves for a temporary restraining order requiring that he be transferred back to home confinement pending final disposition of his § 2241 petition. The court **grants the motion.**

**I.   BACKGROUND**

In 2013, the sentencing judge sentenced petitioner to a term of 180 months of imprisonment for trafficking methamphetamine in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* J. & Commitment, *United States v. Ramirez*, No. 12-298 (E.D. Cal. July 9, 2013), ECF No. 34. While incarcerated, defendant worked and participated in various programs offered by the Bureau of Prisons (BOP). *See* Ramirez Decl. ¶¶ 2–5, Pet. Ex. A, ECF No. 1-2; *see also* Summary Reentry Plan at 2, Ex. J,

1

1  ECF No. 7 (listing education courses completed).[1]  Petitioner also waited to participate in the
2  Residential Drug Abuse Program (RDAP) during the entire time he was incarcerated, and may
3  have earned credits for being on the waitlist.  *Id.* ¶¶ 6–7, 24; *see* Reply at 8, ECF No. 14 (prisoner
4  may earn credits by virtue of being on waitlist for an applicable program).  In May 2023,
5  petitioner's case manager informed petitioner he was eligible to be released to a BOP halfway
6  house due to his First Step Act (FSA) earned time credits despite being unable to participate in
7  the RDAP program for lack of available spaces.  Ramirez Decl. ¶¶ 6–8, 24; *see also* Summary
8  Reentry Plan at 4 ("Ramirez was reviewed for the First Step Act and was determined to be
9  eligible.  He subsequently had 365 days of Federal Time Credit applied.  He has a low-risk
10 recidivism level."); Liwag Decl. ¶ 9, ECF No. 13-1.  The case manager informed defendant his
11 FSA projected release date was July 5, 2023, and he would be released to the Day Reporting
12 Center (DRC) in Sacramento with home confinement and an ankle monitor.  Ramirez Decl. ¶ 9.
13     BOP released petitioner on July 5, 2023.  *Id.* ¶ 10.  Petitioner lived with his elderly mother
14 who is unable to live alone and requires assistance and complied with all the applicable rules of
15 home confinement: he attended classes provided by the DRC, complied with drug and alcohol
16 testing and obtained clean results, and wore his ankle monitor.  *Id.* ¶¶ 10–18; *see also* Barbour
17 Decl. ¶ 2, ECF No. 10-3.  Then on November 15, 2023, after four months of complying with all
18 the applicable programming rules, the Residential Reentry Office (RRM) ordered petitioner to
19 turn himself in and go back into custody.  Ramirez Decl. ¶¶ 20–21.  A case manager informed
20 petitioner his FSA credits were cancelled because he did not complete a required class.  *See id.*
21 ¶¶ 20–24.  Petitioner received a new calculation sheet, which states "FSA CREDIT REMOVED
22 FOR NOT COMPLETING RDAP AND POSS FIREARM CONVICTION."  Ex. C, ECF No. 1-
23 4; Mot. at 5, ECF No. 10.  Petitioner represents BOP has informally conceded the reference to a
24 firearm conviction is inaccurate and does not apply, and respondents do not challenge this
25 representation.  *See* Pet. at 3, ECF No. 1-1; Mot. at 5.  BOP's new calculation states plaintiff is
26 ineligible for FSA credits, including not only any credits he received for being on the RDAP

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

2

1   waiting list,[2] but also the credits he earned for his "consistent work and programming" while in
2   BOP custody.  Ramirez Decl. ¶ 24.  Specifically, it appears BOP cancelled all 365 days of
3   petitioner's FSA earned time credits.  *See* Summary Reentry Plan at 4 (noting petitioner had 365
4   days of FSA credits applied).  Petitioner turned himself in to DRC Sacramento on November 17,
5   2023, as ordered, and has been in Sacramento County Jail since then.  *Id.* ¶ 22; Barbour Decl. ¶ 2.
6        On December 1, 2023, petitioner, through counsel, submitted a Remedy Request to BOP
7   to challenge the cancellation of his FSA credits.  Ex. E, ECF No. 1-6.  The request was
8   supplemented on December 7, 2023.  Ex. F, ECF No. 1-7.  On December 12, 2023, petitioner
9   sent a BP-9 Request for Administrative Remedy to BOP.  Ex. G, ECF No. 1-8; Ex. I, ECF No. 1-
10  10.  Then on December 14, 2023, petitioner filed his petition for habeas relief under 28 U.S.C.
11  § 2241, Pet., and the next day, filed this motion for a temporary restraining order, Mot.  The court
12  set an expedited briefing schedule, Min. Order, ECF No. 11, and briefing is now complete, *see*
13  Opp'n, ECF No. 13; Reply.

14  **II.     SUBJECT MATTER JURISDICTION**

15       Respondents contest this court's subject matter jurisdiction.  They argue the court "lacks
16  authority to usurp BOP exclusive power to determine an inmate's place of confinement, including
17  home confinement, under 18 U.S.C. § 3624(c)(2)."  Opp'n at 2.  In every case, the threshold
18  question a federal court must answer affirmatively is whether it has jurisdiction.  Fed. R. Civ. P.
19  12(h)(3).

20       Here, the court finds it does have subject matter jurisdiction over this action.  A defendant
21  may challenge the BOP's computation of FSA credits.  *See Preiser v. Rodriguez*, 411 U.S. 475,
22  487 (1973) ("Even if the restoration of the respondents' credits would not have resulted in their
23  immediate release, but only in shortening the length of their actual confinement in prison, habeas
24  corpus would have been their appropriate remedy."); *cf. Zavala v. Ives*, 785 F.3d 367, 370 n.3
25  (9th Cir. 2015) ("A defendant may . . . challenge BOP's calculation [of sentencing credits under
26  18 U.S.C. § 3585(b)]—in other words, the execution of the sentence—by filing a petition for a

---

[2] The parties dispute whether petitioner in fact declined, refused or opted-out of RDAP, *compare* Mot. at 9 *with* Liwag Decl. ¶ 10, but the court need not resolve that dispute here.

3

writ of habeas corpus under 28 U.S.C. § 2241."). Although federal courts "lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621," courts have jurisdiction over habeas petitions alleging "that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority[.]" *Close v. Thomas*, 653 F.3d 970, 973–74 (9th Cir. 2011) (quoting *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011)). Here, petitioner alleges BOP rescinded his FSA credits in violation of federal law. Pet. at 8–9; Mot. at 10. Success on his claim would necessarily lead to speedier release and thus petitioner's claim falls within "the core of habeas corpus." *See Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016) (quoting *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011)).

### III.   EXHAUSTION OF REMEDIES

As a general matter, "[f]ederal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). However, courts have discretion to waive the exhaustion requirement when administrative remedies are inadequate or their exercise would be futile, or irreparable injury would result without immediate judicial intervention. *See Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). However, this discretion is not "unfettered." *Id.* at 998. A "key consideration" in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme." *Id.* at 1000 (internal citation and quotation omitted).

It is undisputed petitioner has not completed BOP's administrative review process prior to filing the instant action. *See* Mot. at 7; Opp'n at 5. However, as discussed further below, the court finds plaintiff has shown irreparable harm. If the BOP had not revoked petitioner's FSA credits, petitioner would still be under home confinement. Therefore, for the purposes of this TRO, the court finds the exhaustion requirement waived.

### IV.   TEMPORARY RESTRAINING ORDER

#### 1.   Legal Standard

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard

in opposition." Fed. R. Civ. P. 65(b)(1)(A).  The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).  In determining whether to issue a temporary restraining order, courts apply the factors that guide the evaluation of a request for preliminary injunctive relief: whether the moving party "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in [its] favor, and . . . an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

Alternatively, courts may analyze a TRO request using a sliding scale approach through which the elements of the "test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  This test requires plaintiffs to demonstrate the requisite likelihood of irreparable harm, show that an injunction is in the public interest, raise "serious questions" going to the merits, and show a balance of hardships that "tips sharply" in plaintiffs' favor. *Id.* at 1131–36 ("serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*).

**B.     Analysis**

Regarding the likelihood of success on the merits, petitioner "must show that there is a 'substantial case for relief on the merits.'" *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011)).  Petitioner does not need to show "it is more likely than not that [he] will win on the merits." *Leiva-Perez*, 640 F.3d at 966.

The government contends petitioner has not met his burden, because the court is precluded from issuing the injunctive relief petitioner seeks, namely release to home confinement. Opp'n at 6.  While parts of the government's arguments are correct, as discussed below, the government ignores the central issue embedded in petitioner's motion: that is, whether the BOP's decision not to award petitioner earned time credits violates the FSA.

Ultimately resolution of the petition here turns on whether the BOP's interpretation of the First Step Act (FSA), a sentencing reform bill signed into law in 2018, is correct. Pub. L. No. 115-391, 132 Stat. 5194 (2018). As relevant here, the FSA amended 18 U.S.C. § 3632 to require the BOP to provide eligible prisoners the opportunity to participate in "evidence-based recidivism reduction programs" and "productive activities" which in turn allows them to "earn time credits" (FTCs).[3] 18 U.S.C. § 3632(a). Federal prisoners who successfully complete the requisite programming "shall earn time credits," *id.* § 3632(d)(4)(A), and these FRCs "shall be applied toward time in prerelease custody or supervised release," *id.* § 3632(d)(4)(C). "Eligibility to apply earned FTCs is separate and unrelated to the eligibility requirements under 3621(e) [early release based on participation on RDAP]." BOP Program Statement at 17–18.[4] Here, petitioner was awarded his FSA earned time credits, because he had participated in all the required FSA programming and otherwise qualified for those credits. *See* Mot. at 8. Nonetheless, four months after his release to home confinement, petitioner's FTCs were cancelled, and he was ordered back into custody at the Sacramento County Jail for not completing RDAP and, apparently erroneously as noted above, for having a firearm conviction. *Id.* at 4–5.

Another court in this circuit has held the BOP does not have the discretion to exclude an eligible prisoner from having his earned time credits applied under the FSA, because the FSA language in 18 U.S.C. § 3632(d)(4)(C) is mandatory. *Jones v. Engleman*, No. 22-05292, 2022 WL 6445565, at *1 (C.D. Cal. Oct. 7, 2022) (adopting in relevant part the statutory analysis in the findings and recommendations); *see also O'Bryan v. Cox*, No. 21-4052, 2021 WL 3932275, at *3 (D. S.D. Sept. 1, 2021) (finding use of word "shall" in § 3632(d)(4)(A) and (C) imposed a duty rather than a grant of discretion on the BOP). This court agrees with that statutory interpretation and applies it here. In this case, petitioner has presented a substantial case showing he was

---

[3] The court uses FTCs (Federal Time Credits) and FSA credits interchangeably in this order.

[4] U.S. Dep't of Just., Fed. Bureau of Prisons, Change Notice No. 5410.01 CN-1, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) (Feb. 6, 2023), https://www.bop.gov/policy/progstat/5410.01_cn.pdf. The court takes judicial notice of the BOP's policy statement. *See* Fed. R. Evid. 201; *see also United States v. Thornton*, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of BOP's policy statement).

entitled to earned time credits under the FSA. *See, e.g.*, Summary Reentry Plan. Accordingly, the court finds petitioner has made out a substantial case for relief on the merits in this instance.

The court notes, while granting FTCs to eligible prisoners is mandatory, the government is correct that under § 3632(d)(4)(C), it is within the BOP's discretion to apply FTCs toward either prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(C). Prerelease custody includes either placement in a residential reentry center or home confinement. *See* 18 U.S.C. § 3624(g)(2) ("Types of prerelease custody."). In other words, while the BOP has discretion to determine the form of release, transfer to a non-prison setting is mandatory for eligible prisoners. Against the backdrop of this mandate, whether the rescission of all of petitioner's earned FTCs is justifiable in light of petitioner's failure to participate in RDAP, raises a serious question that goes to the merits. *See* Reply at 5–8. Petitioner has shown he participated in programs that may be counted towards FTCs presented a serious question regarding whether failure to participate in one program warrants the rescission of all his FTCs, particularly if that one program was never available to petitioner as he represents. *See* Summary Reentry Plan at 4–7 (noting petitioner had not completed RDAP, but nevertheless was determined to be eligible for the FSA and had 365 days of credit applied); *see also* 28 C.F.R. § 523.41(c) (noting eligible inmates must be "successfully participating" in applicable programs "to earn FSA Time Credits for those" programs). The government points to no authority allowing the BOP to cancel all FTCs earned by way of other programming solely because an inmate has not completed RDAP, and the court has not located any. Moreover, as noted, "[e]ligibility to apply earned FTCs is separate and unrelated to the eligibility requirements under" RDAP. BOP Program Statement at 18; *compare* 18 U.S.C. § 3632(d) (FTCs), *with* 18 U.S.C. § 3621(e) (RDAP early release). The record currently before the court provides no explanation why the BOP cancelled all petitioner's FTCs given the distinct nature of the statutory provisions and their requirements. It is for these reasons petitioner has raised a serious question going to the merits, whether BOP cancelled his FTCs in violation of federal law and then based on that cancellation revoked his mandatory prerelease custody.

/////

As to the firearm conviction, petitioner has shown he did not incur a disqualifying offense. Under § 3632(d)(4)(D), certain prisoners are ineligible to receive FTCs. A firearm conviction under § 922(g), as petitioner's is, is not a disqualifying offense. *See id.*; *see also* Pet. at 7. As noted above, petitioner says without rebuttal that "BOP staff has informally confirmed to Defense Counsel that the reference to a possession of firearm conviction is in error and not the reason that the credits were rescinded." Pet. at 3; Mot. at 5. On this record, petitioner also has shown BOP likely exceeded its statutory authority to the extent it canceled his FTCs on the basis of a non-disqualifying firearm possession conviction.

In addition to raising serious questions that go to the merits, petitioner also has shown the balance of hardships tips sharply in his favor. First, petitioner has shown irreparable harm: if BOP unlawfully rescinded his FSA credits, the time he could have continued spending in prelease custody cannot be returned to him. As petitioner argues, every day he is incarcerated rather than serving the final portion of his sentence on prerelease custody or supervised release as mandated by the First Step Act results in irreparable injury; petitioner cannot get back the time he spends incarcerated. *See* Mot. at 10. Second, BOP will not be prejudiced or harmed by placing petitioner back into prelease custody given that BOP does not have discretion to disregard a Congressional directive as outlined in 18 U.S.C. § 3632(d)(4)(C). Finally, petitioner has shown an injunction is in the public interest as determined by Congress in passing the FSA, given the purpose of § 3632 is to incentivize evidence-based recidivism programs and productive activities. *See* 18 U.S.C. § 3632(d). Ensuring prisoners receive the time credits as provided by the statute and in accordance with the goals of the statute is in the public interest. *Cf. Turner v. Vilsack*, No. 13-1900, 2013 WL 6074114, at *7 (D. Or. Nov. 18, 2013) ("There is a strong public interest in ensuring the RD program is properly carried out to meet the purposes and goals of these statutes and regulations, to wit, aiding low-income persons and families to obtain and remain in affordable, safe, and sanitary housing."). Moreover, petitioner will be able to assist his mother and reintegrate into his community and continue his rehabilitation. Given petitioner has been in full compliance with all conditions to ensure public safety, this also weighs in favor of the public interest.

Having considered the required factors, the court finds petitioner has shown serious questions that go to the merits and that the balance of hardships tips sharply in his favor.

## V.   CONCLUSION

For the reasons above, the court **grants** petitioner's motion for a temporary restraining order. Petitioner Sergio Adrian Ramirez shall be immediately transferred back to the home confinement BOP previously determined to be the appropriate form of prerelease custody pending disposition of his Petition for a Writ of Habeas Corpus. Petitioner shall not be required to post bond.

ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Respondents are hereby ordered to show cause why a preliminary injunction should not issue continuing the above Temporary Restraining Order and are further ordered to appear before this court on January 12, 2024, at 10:00 a.m.[5] Petitioner shall file any additional brief and supporting evidence in support of its requested motion for preliminary injunction by January 2, 2024, at 5:00 p.m.; respondents shall file their opposition to the motion for preliminary injunction by January 8, 2024, at 5:00 p.m., and petitioner shall file his reply brief by January 10, 2024, at 5:00 p.m. No bond shall issue.

This order resolves ECF No. 10.

IT IS SO ORDERED.

DATED: December 21, 2023.

CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The court has scheduled the preliminary injunction hearing to occur no later than 28 days after the court's issuance of the temporary restraining order. *See* Fed. R. Civ. P. 65(b)(2) (limiting TROs to 14 days, but extendable to 28 days for good cause). Good cause exists to extend the TRO to the full amount allowable by Rule 65 given the upcoming holidays and court closures and to give the parties time to adequately brief the issues.